Linus A. JANKORD, Plaintiff,
Petitioner-Respondent, and
Appellant.

v.

Donna G. JANKORD, Defendant, Re-
spondent-Petitioner, and Appellee.

No. 14704.

Supreme Court of South Dakota.

Argued April 11, 1985.

Decided May 22, 1985.

Allen J. Eide of Gribbin, Burns & Eide,
Watertown, for plaintiff, petitioner-respon-
dent, and appellant.

Paul I. Hinderaker of Austin, Hinderaker
& Hackett, Watertown, for defendant, re-
spondent-petitioner, and appellee.

WUEST, Acting Justice.

This appeal is from an order of the trial
court dividing federal income tax refund
checks received by Linus A. Jankord (appel-
lant) and Donna G. Jankord (appellee) nine-
teen months after their divorce. Appellant
appeals and we reverse, with directions to
enter judgment for appellant on the issue
of ownership.

On August 9, 1982, appellant was divorc-
ed from appellee. Prior to the divorce, a
"Marital Settlement Agreement" was exe-
cuted, after considerable negotiations.
This agreement was approved and adopted
by the trial court as a part of its judgment
and decree of divorce. The agreement pro-
vided for alimony, division of property, and
a paragraph providing that

> Linus shall be responsible for all income
> tax liability for the year 1982 due to the
> operation of Jankord Trucking, including
> all federal income tax liabilities for prior
> years, including all fees for preparation
> of tax returns and negotiating with In-
> ternal Revenue Service.

The parties had been audited by the In-
ternal Revenue Service for the years 1978,
1979, and 1980. At the time of the divorce,
a tax liability for those three years amount-
ed to $73,026.00. Shortly after the divorce,
appellant negotiated a loan and paid the
tax liability.

On January 10, 1983, appellant delivered
his records to a certified public accountant
(CPA) and learned he had sustained a net

operating loss of $146,843.00 in 1982. As a result of this loss, appellant applied for refunds for 1978, 1979, and 1980. The refunds were premised on Section 172 of the Internal Revenue Code, which provides carryback or carryover on net operating losses under certain conditions. Normally, net operating loss is carried back three years and then forward. IRC § 172(b)(1)(A) and § 172(b)(2). A taxpayer, however, may elect to carry it forward. IRC § 172(b)(3)(C).

Appellant chose to carry back the loss so he could use the refunds to apply on the loan he had obtained to pay the tax liability.

Ultimately, the Internal Revenue Service approved refunds of $3,260.21 for 1978; $7,448.00 for 1979; and $11,801.00 for 1980. The checks were made payable to "Linus A. and Donna Jankord." The check for 1980 arrived first and appellee endorsed it and appellant used the proceeds to apply on the loan. A week or so later, the remaining two checks arrived but appellee refused to endorse them. Appellant brought a contempt proceeding, seeking appellee's endorsement. Appellee countered, by claiming an interest in the refunds. After a hearing, the court found:

> The proceeds of subject U.S. Treasury drafts, $22,509.21, is a joint asset of Linus A. Jankord and Donna G. Jankord which did not exist and was not considered by the parties or the Court prior to August 9, 1982.

The court then divided the income tax refunds between the parties, sixty percent to appellant and forty percent to appellee.

■ This court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court has erred as a matter of law. *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985); *Wefel v. Harold J. Westin & Associates, Inc.*, 329 N.W.2d 624 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982).

---

* Revenue Rules 75–368 and 80–6 indicate the refund drafts should have been made payable to

■ The finding of the trial court is correct, no assets by way of refunds existed at the time of the divorce on August 9, 1982. The operating loss had not occurred until the end of the tax year, on December 31, 1982. On the date of the divorce, there was a tax liability for the three years. The operating loss for 1982 was appellant's because they were divorced and their property rights were final. *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981). By carrying back *his* loss for 1982, the refunds were allowed. Neither party had any money due from the government at the time of the divorce; there was nothing but a tax liability. Appellee did not share in the 1982 operating loss and cannot share in the refunds triggered by the loss.

The court erred in concluding this was a joint asset and appellee was entitled to a share of the refunds. *See Jackson v. Jackson*, 281 Ore. 575, 576 P.2d 12 (1978).

The order is reversed and the trial court is directed to enter judgment for appellant for the amount of the drafts and interest accumulated by their investment during this litigation.*

All the Justices concur.

