Michael OLLERICH and Sheila Ollerich, as Guardians of the Person and Estate of Ryan M. Ollerich, a minor child, and Michael Ollerich and Sheila Ollerich, Individually, Plaintiffs,

v.

Robert ROTERING and Emergency Medical Physicians, P.C., Defendants/Appellants,

v.

Clara JOHNSON and McKennan Hospital, Defendants/Appellees.

No. 15767.

Supreme Court of South Dakota.

Argued Nov. 16, 1987.

Decided Feb. 10, 1988.

Harold C. Doyle, Susan E. Torgerson of May, Johnson, Doyle & Becker, P.C., Sioux Falls, for defendants/appellants.

Carleton R. Hoy, Rick W. Orr of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants/appellees.

WUEST, Chief Justice.

Appellants Emergency Medical Physicians, P.C. (E.M.P.), appeals a judgment of indemnity in favor of McKennan Hospital. We affirm.

On September 20, 1984, Sheila Ollerich (Ollerich) took her son Ryan to the emergency room at McKennan Hospital. Ryan had virtually severed the tip of the little finger on his left hand in an accident. Dr. Robert Rotering sutured the finger and Nurse Clara Johnson applied a bandage to the finger.

Later that day, the bandage came loose. Ollerich returned Ryan to the hospital, and Nurse Johnson again bandaged the finger. At Johnson's request, Dr. Rotering came to the treatment room, and the two of them discussed the need to dress the entire hand so as to protect the fingertip and prevent Ryan from removing the dressing. Dr. Rotering decided they should wrap the fingers together into a mitt-type bandage, and he remained in the room while Johnson applied the dressing.

Two days later, Ollerich took Ryan to his pediatrician to have the finger examined as Dr. Rotering had directed. The bandage was clean and appeared to be professionally made. Upon removing the bandage, however, Ryan's pediatrician discovered soft tissue damage to the fingers resulting from restricted blood flow to the fingers.

The Ollerich's, as guardians, brought suit on behalf of Ryan against Dr. Rotering, his employer, E.M.P., Nurse Johnson, and her employer, McKennan Hospital. McKennan Hospital brought a cross-claim of indemnity against E.M.P. for any of its liability in connection with Ryan's treatment.

At trial, medical witnesses testified that the vascular compromise probably occurred because the ace bandage was too tight, either because it had been wrapped too tightly or had become too tight as a result of swelling. Not only was the bandage too tight, but the fingertips were not left exposed, which prevented observation of circulation to the fingers. The jury found Dr. Rotering and Nurse Johnson jointly and severally liable for the injuries and understood that damages would be imputed against both E.M.P., Dr. Rotering's employer, and McKennan Hospital, Nurse Johnson's employer.

Prior to trial, the parties stipulated that the court would decide McKennan Hospital's cross-claim against E.M.P. for indemnity. The court gave judgment on the cross-claim to McKennan Hospital under the provisions of an emergency room services contract entered between McKennan and E.M.P. and under the common-law doctrine of the "borrowed servant." E.M.P. argues the trial court erred on both grounds.

In its findings of fact, the trial court found that "[A]t the time of the alleged second bandaging or wrapping of Ryan Ollerich's hand, nurse Clara Johnson was under the direction, control or supervision of Defendant Dr. Rotering."[1] The trial court heard the evidence and we do not set aside its finding on a question of fact unless it is clearly erroneous. SDCL 15–6–52(a); *Jankord v. Jankord*, 368 N.W.2d 571 (S.D.1985); *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985). There is evidence which supports this finding of the trial court, therefore we will not set it aside.

The emergency room physicians agreement contained an indemnity provision. Paragraph IV. D. of the agreement provided:

This Agreement is made upon the express condition that the Hospital is to be free from liability and claim for damages by reason of any injury for any cause

arising through the negligence of the Physicians. The Physicians hereby covenant and agree to indemnify and save harmless the Hospital against any liability, loss, costs and obligations on account of or arising from or out of any such acts of conduct whatsoever by the Physicians. Physicians shall be free from liability and claim for damages by reason of any injury, from any cause or causes arising through the negligence of the Hospital or its employees or agent not under the direction, control or supervision of the Physicians. Hospital hereby covenant[s] an[d] agrees to indemnify and save harmless Physicians from liability, loss, costs and obligations on account of or arising from out of any such acts of conduct whatsoever by the Hospital.

In its findings of fact,[2] the trial court found that:

Under the contract between the McKennan Hospital and Emergency Medical Physicians, P.C., Paragraph 4(d), Emergency Medical Physicians is to indemnify and hold McKennan Hospital harmless from *any liability caused through the physician's negligence* and for the negligence of McKennan Hospital's *employees or agents who are under the Emergency Medical Physician's direction, control or supervision.* (Emphasis supplied).

E.M.P. argues the parties simply agreed to indemnify each other for their own negligence. Specifically, E.M.P. argues although the first sentence in the second paragraph protects the physicians from liability in cases where the hospital employee *is not* acting under the direction, control, or supervision of the physician, it does not expressly provide for physician liability in cases where the hospital employee *is* acting under the direction, control, or supervision of the physician. E.M.P. argues, therefore, that the trial court erred in finding the positive or converse form of that sentence necessarily follows, i.e., that, by implica-

---

1. The court entered this finding in both its findings of fact and its conclusions of law, but this is certainly a finding of fact.

2. The court entered this as a finding of fact, but construction of a written contract is a question of law. *Delzer Const. Co. v. South Dakota State Bd.,* 275 N.W.2d 352 (S.D.1979).

tion, E.M.P. is liable if the hospital employee is acting under the direction, control, or supervision of the physician. We disagree.

In our judgment, a fair interpretation of paragraph IV. D. indicates E.M.P. would indemnify McKennan Hospital in this type of situation. The first clause lends effect to the second clause by providing that the hospital will be free from liability for "damages by reason of any injury for any cause arising through the negligence of the physicians," and E.M.P. will indemnify the hospital for any liability "on account of or arising from or out of any such acts of conduct whatsoever by the Physicians." The second clause provides full meaning to the first clause and fairly supports the determination that E.M.P. would indemnify McKennan Hospital for negligence of hospital employees working under the direction, control or supervision of a physician. We do not believe the trial court's interpretation was erroneous as a matter of law. We therefore affirm the trial court on this issue and do not address the effect of the borrowed servant doctrine.

Judgment affirmed.

MORGAN, HENDERSON and MILLER, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

As additional support for the majority opinion, I write specially to point out that the issue is not liability, but whether the contract between the physicians and the hospital shifts responsibility for liability.

Paragraph IV. D. of the contract provides that the hospital is free from liability and claim for damages by reason of *any* injury for *any* cause arising *through* the negligence of physicians. This injury arose *through* the negligence of physicians. The physician told the nurse to use a "mitt wrap." Whether this mitt wrap was wrapped too tight, or became too tight as a result of swelling is immaterial because the nature of the mitt wrap itself prevented the condition of the hand from being observed and the problems from being corrected. This is negligence which caused this injury, at least in part. Consequently, this injury arose through the negligence of the physician. This is so even if the physician's negligence was not the sole cause of the injury because the negligence of the nurse, if any, in wrapping the mitt too tight, arose through the negligence of the physician in selecting the mitt wrap.

The second sentence of paragraph IV. D. of the contract is also supportive. It basically requires physicians to indemnify hospital against *any* liability arising from *any* such acts *whatsoever* by physicians.