[S. F. No. 3613.    Department One.—January 10, 1907.]

# FIREMAN'S FUND INSURANCE COMPANY, and TRANSATLANTIC FIRE INSURANCE COMPANY, Appellants, v. PALATINE INSURANCE COMPANY et al., Respondents.

FIRE INSURANCE—LOSS BY SEVERAL COMPANIES—CONTRIBUTION—CONTRACT FOR ADJUSTMENT PRO RATA—MISTAKE—UNJUST PAYMENT —RELIEF IN EQUITY.—Although in the absence of contract between several fire insurance companies whose policies require a *pro rata* payment of loss, the contracts are independent, and there is no contribution between them in case of payment of any excess by one or more, yet where several companies entered into an agreement to determine the amount of their loss, and to apportion it among themselves as their policies may require, and solely by reason of such agreement, in course of common adjustment, plaintiff companies were compelled, by mutual mistake of all the insurers, through their adjuster to pay all of the loss on specified machines insured by them, for which defendant companies, by the general terms of their policies, were liable *pro rata*, plaintiffs, upon discovery of the mistake, after such payment, were entitled, as parties to the contract, to be relieved in equity from the unjust and inequitable burden imposed upon them through such mistake.

ID.—CONSTRUCTION OF POLICIES—PROPERTY COVERED.—The several independent contracts of the plaintiff and defendant companies must be separately construed.  The mere fact that the policies of plaintiffs were specially limited to "five type-setting machines with fixtures and appurtenances" contained in the building of the insured publishing company, and that they were not specifically mentioned in the policies of defendants, which covered "printing presses, stereotyping machinery, and other fixed and movable machinery, implements, tools, furniture, and fixtures," contained in the same building, does not authorize the exclusion from defendants' policies of the type-setting machines, coming clearly within their general provisions concurrently with plaintiffs' policies, though covering other property not insured by plaintiffs.

ID.—EFFECT OF PRO RATA CLAUSE, AND PAYMENT BY PLAINTIFFS.— Under the *pro rata* clause contained in all the policies, each of the insurers, plaintiffs and defendants, was originally liable to the insured for such proportion of the loss on the type-setting machines as the amount of the insurance thereon bore to the whole of the insurance covering the same.  Plaintiffs, therefore, in paying to the insured the whole amount of the loss on such machines paid not only the amounts for which they were liable under their policies but also the amounts for which defendants were liable under their policies.

ID.—LIABILITY TO INSURED UNDER AGREEMENT—COMPULSORY PAYMENT.
—Under the terms of the agreement, the plaintiff companies when
required to pay to the insured the whole amount of the insurance
on the type-setting machines as the result of the agreed adjustment,
would have no defense to an action against them by the insured
based upon the adjustment and apportionment made which the in-
sured had the right to accept and rely upon as a new agreement;
and the plaintiff companies were therefore compelled to make such
payment to the insured.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.    Frank H. Kerrigan,
Judge.

The facts are stated in the opinion of the court.

Goodfellow & Eells, for Appellants.

Van Ness & Redman, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment
for defendants entered upon the sustaining of a general de-
murrer to plaintiffs' complaint, and the refusal of plaintiffs
to amend.

This action was one brought by two insurance companies
against six other insurance companies, all of which companies,
both plaintiffs and defendants, had insured by their several
policies certain property of the Standard Publishing Com-
pany, also a defendant, against loss by fire.    The policies
issued by plaintiffs in terms covered "five type-setting ma-
chines, with fixtures and appurtenances thereunto belonging,
contained in the said building of the said insured," and the
policies issued by defendant companies in terms covered
"printing presses, stereotyping machinery, and other fixed
and movable machinery, implements, tools, furniture and
fixtures contained in the building of the said insured."    The
policies of plaintiffs were each for two thousand five hundred
dollars, and the policies of the defendant companies were each
for smaller amounts.    Each policy contained a provision to
the effect that the insuring company should not be liable under
its policy for a greater proportion of any loss than the amount
thereby insured should bear to the whole insurance covering
said property.    The property having been "damaged or de-

stroyed" by fire, plaintiff and defendant companies "jointly authorized an adjuster of losses to act as their agent in adjusting and settling the loss with the defendant Standard Publishing Company." This adjuster, on behalf of the insurers, agreed with the insured that the total loss was $4,373.68, and that the loss on the type-setting machines was $2,859, and the loss on the other property $1,514.68. Upon the supposition and theory, induced "by inadvertence and mistake," that the policies of defendant companies did not by their terms cover the type-setting machines, said adjuster agreed with the insured, *on behalf of all the companies,* that plaintiffs would pay the whole loss thereon, viz. $2,859, and the defendant companies would pay, each in proportion to the amount of its policy, the loss on the other property, viz. $1,514.68. Upon the same supposition and theory, proofs of loss against all the companies were thereupon prepared by the adjuster, and executed and presented by the insured in accord with the terms of said agreement. The defendant companies forthwith paid the amounts stated in said proofs of loss and claimed from them, and received from the insured releases in full of all liability in respect of said loss. The type-setting machines were machinery contained in the building of insured, and it is claimed that they were covered by the description of property insured contained in the policies of the defendant companies, and that such companies were liable to the insured for a proportionate part of the loss thereon. Neither plaintiffs nor insured knew of the mistake of the adjuster at the time of the payment by and release of defendants, nor until a long time thereafter. Upon discovery of the facts, plaintiffs demanded of defendants that the adjustment be reformed, and that they contribute to the payment of the loss upon the type-setting machines, which they refused to do. It is alleged that thereafter "the plaintiffs were compelled to and did pay the said insured," the whole of the loss on said type-setting machines, $2,859, each paying half, and the defendants have not contributed or paid plaintiffs any portion thereof.

This is the case made by the complaint. Upon these facts, plaintiffs asked that the adjustment be set aside and reformed, that an accounting be had between plaintiffs and defendants in respect to the amount of said loss and the moneys paid and

which should be paid by the several plaintiffs and defendants respectively, and that defendant companies be required to pay plaintiffs such proportion of the loss on the type-setting machines as was due the insured from them under the terms of their respective policies.

We think there can be no doubt, under the allegations of the complaint, that the policies of the defendant companies, by their terms, covered the type-setting machines. There can be no question as to the fact that if plaintiffs' policies had not been issued at all, the broad terms of defendants' policies would necessarily have included not only the property specifically mentioned, but also all other fixed and movable machinery contained in the building of insured, for it is so expressly declared thereby. The language could not have been more inclusive. The mere fact that plaintiffs' policies were limited in terms to a portion of the property not specifically mentioned in defendants' policies, and only included in the general designation of machinery, does not authorize us to exclude from defendants' policies property coming clearly within their provisions. There was no connection between the contracts of plaintiffs and defendants. Each of the companies had a separate, independent contract with the insured, which must be separately construed. Defendants' contracts were clear and free from ambiguity so far as the descriptions of property insured were concerned, and must be read according to their terms, regardless of the manner of description used in other contracts to which defendants were not parties.

Defendants' policies, therefore, covered not only the property other than type-setting machines, but also, concurrently with those of plaintiffs, covered such machines. Under the *pro rata* clause contained in all the policies, each of the insurers, plaintiffs and defendants, was originally liable to the insured for such proportion of the loss on such machines as the amount of the insurance thereon bore to the whole of the insurance covering the same. Plaintiffs have, therefore, in paying to insured the whole amount of the loss on the type-setting machines, paid not only the amounts for which they were liable under their policies, but also the amounts for which defendants were liable under their policies.

If this were all, whatever might be said as to moral reasons in favor of the reimbursement of plaintiffs by defendants,

plaintiffs would have no legal cause of action against defendants. It is well settled that there is no right of contribution among insurers whose policies contain such a clause. Each of the contracts of insurance is entirely separate and independent of all the others. Each insurer is liable directly to the insured for its proportion of the loss, and the insured can recover from any insurer only such proportion of the loss as it is liable for under the terms of its policy. The payment by one of such insurers of a larger amount than it is bound to pay in no way affects the liability of the other insurers for their proportion of the loss, and gives the party so paying no right to recover the excess so paid from the other insurers. (See 4 Cooley's Briefs on Law of Insurance, secs. 3099, 3108, 3862; *Hanover Fire Ins. Co.* v. *Brown,* 77 Md. 64, [39 Am. St. Rep. 386, 25 Atl. 989, 27 Atl. 314]; *Good* v. *Buckeye etc. Co.,* 43 Ohio St. 394, [2 N. E. 420].)

We are of the opinion, however, that the contract made by the insurers for the payment of the loss materially changed the situation. The insurers came together for the purpose both of determining the amount of loss and *apportioning the same among themselves as their policies might require.* It was immaterial whether they did this each by its own agent, or by a common agent jointly authorized to act for all. Having determined the total amount of loss satisfactorily to the insured and to themselves, they *jointly* agreed with the insured as to the respective amounts each insurer should pay. It was entirely immaterial to the insured in what proportion the various insurers paid, as long as the aggregate amount paid equaled the total loss. The insured was at liberty to accept whatever apportionment of liability the insurers jointly proposed, regardless of its own views as to whether thereunder each company was paying its proper proportion. If the insured was satisfied with the apportionment made, that was a matter which only concerned the insurers among themselves, and it is immaterial whether or not the insured believed each company was paying its proper proportion. Any mistaken theory of the insured in that behalf would not affect the validity of the settlement as to it, so long as it was satisfied therewith. It had the right to accept the joint proposition of the insurers as to the amount each should pay, and when it accepted it, the adjustment and apportionment

of liability constituted as to it a new agreement, upon which it was entitled to rely, and upon which a separate action might have been maintained against each insurer for the amount it had promised to pay thereunder. (See *Stockton etc. Works* v. *Glen's Falls Ins. Co.,* 98 Cal. 557, 569, [33 Pac. 633].) In view of the allegations of the complaint, we can conceive of no defense that could have been successfully made by plaintiffs here to an action by the insured against them, based on such agreement jointly made by all the insurers, and relying upon which the insured had made his demands against the various insurers, and had released the defendants upon payment by them of the amounts agreed upon as to them. Solely by reason of that agreement (which as to apportionment was one among the insurers, as well as one with the insured), plaintiffs were compelled to pay to insured amounts for which they were not liable under their policies, and for which defendants were liable. This burden was imposed upon them by the agreement to which all the insurers were parties, and, according to the allegations of the complaint, was entirely the result of inadvertence and mistake on the part of all the insurers. It was the intention of all the insurers to apportion the liability among themselves in accord with the terms of the respective policies, and it was inadvertently and mistakenly supposed and assumed by all the insurers, in the person of their common agent, that defendants' policies did not cover the type-setting machines, and for that reason alone the whole loss thereon was apportioned to plaintiffs. Solely in consequence of this mutual mistake on the part of the insurers, plaintiffs were compelled to pay the insured moneys for which they were not liable under their policies and for which defendants were liable. We know of no good reason why relief may not be obtained against the defendants from the results of such a mistake, entirely independent of any doctrine of assignment, contribution, or equitable subrogation, and none, in our opinion, is given in the brief of learned counsel for defendants. As said by their counsel, plaintiffs, according to their complaint, have a standing in equity as original parties to a contract entered into under mutual mistake of all the parties, to be relieved from the unjust and inequitable burden to which they have been subjected through such mistake, and to be restored, so

CL Cal.—17

far as they can be without injury to innocent persons, to the position they would have occupied had it not been for such mistake.

We are of the opinion that the complaint sufficiently states a cause of action as against a general demurrer.

The judgment is reversed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.